IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANSON O.C. FRAZIER, | No. 2:12-CV-0343-LKK-CMK-P |
|     Petitioner, | |
|   vs. | FINDINGS AND RECOMMENDATIONS |
| M.D. BITER, | |
|     Respondent. | |
| _____/ | |

       Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 16), and petitioner's reply (Doc. 22).[1]

/ / /

/ / /

/ / /

/ / /

---

[1] With his reply, petitioner seeks an order for discovery and an evidentiary hearing.

1

# I. BACKGROUND

A. **Facts**[2]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> On July 17, 2007, defendant, along with his girlfriend Myra, his sister Tanya, Tanya's 18-month-old daughter, defendant's friend Jeremy Neal, and Jeremy's nephew Brandon, walked from an apartment complex to a convenience store to get something to drink. Along the way, they were approached from behind by three men – Alberto Estrada, Jimmy Palmer, and a man named Frankie – all wearing red, the color worn by members of the Nortenos gang. Defendant, who is a member of the Surenos gang and wearing blue, turned around and asked the three men if they had a cigarette. One of them replied, "Fuck no." Palmer asked defendant, "Do you bang?" (a phrase used to determine whether someone is in a gang). Defendant pulled a gun out of his pocket and said something like, "Say I won't" or "You don't think I'll do it" and then fired the gun at Estrada, hitting him in the chest. Defendant fled the scene, but was arrested shortly thereafter.
>
> Several hours after the shooting, defendant's sister, Tanya, told police the three men had been "talking shit about southsiders." She confirmed that defendant pulled out a gun, said "You don't think I'll do it," and shot Estrada, adding "That's why I'm mad at him [defendant] cause now Im not going to see him forever. I love him but he's going to prison forever."
>
> The day of the shooting, police interviewed defendant, who denied being present at the shooting and denied any knowledge of the incident. Several months later, Palmer, who was in custody on another matter, identified defendant in a photographic lineup.
>
> At trial, Tanya denied much of the information she provided to detectives the night of the shooting, claiming she lied that night because she had a warrant and was under the influence of drugs and feared she would be arrested, and because she was pregnant and was afraid her children would be taken away from her.

///

---

[2] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

   Defendant testified that Estrada called him a "snitch" and then lifted up his shirt, revealing a gun.  When Estrada went to grab the gun, defendant pulled his own gun out of his back pocket, cocked it, and fired it at Estrada.

   During cross-examination, the prosecution sought to impeach defendant as to his credibility with an audiotape of a jailhouse conversation between defendant and his girlfriend, Myra.  Defense counsel objected first on hearsay grounds.  The court overruled the objection but heard argument from counsel at the bench regarding the relevance of the proposed evidence.  The court concluded the evidence was admissible and permitted the jury to hear the following:

   Myra: Everything else doesn't even matter.

   Defendant: Hey, did you see that?  Did you memorize it.  Babe.

   Myra: That's all you baby.

   Defendant: Huh?

   Myra: I don't know what you [sic] talking about.

   Defendant: I'm asking . . . Okay.  Can I call you as a witness?  That's all right?  Yes or no?  I need . . . .

   Myra: I thought . . . (unintelligible).

   Defendant: Huh?

   Myra: (Unintelligible)?

   The tape then continued,

   Myra: I think she's having a boy.

   Defendant: Look.

   Myra: But. . . . Yeah, she's eight months pregnant. . . .

   Defendant: Listen, Myra.  Can I tell you something?  Myra?  Will you get on the stand and give your side of the story of what happened?

   Myra: What?

   Defendant: Will you get on the stand and give your side of the story of what happened?  Pick up the phone.  Can we pick the phone up?

   Defendant explained that he had asked Myra to memorize the telephone numbers of his attorney and someone named Evie Joseph.

B.     **Procedural History**

Petitioner was convicted of second degree murder and unlawful possession of a firearm with enhancements for the following: (1) personal use of a firearm causing great bodily injury; (2) having one prior "strike" conviction; and (3) having served one prior prison term. Petitioner was sentenced to an aggregate prison term of 55 years to life, plus 11 years. The California Court of Appeal affirmed the conviction and sentence in an unpublished opinion. The California Supreme Court declined direct review. Petitioner's state habeas petitions were denied by the Butte County Superior Court, the California Court of Appeal, and the California Supreme Court.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim,

"concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

/ / /

/ / /

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

In his petition, petitioner claims: Ground 1 – (a) the trial court erred by admitting "speculative evidence"; and (b) the trial court committed instructional error; Ground 2 – appellate counsel was ineffective for failing to raise all issues on appeal; Ground 3 – trial court erred by admitting hearsay evidence; and Ground 4 – the prosecutor created a "false inference." For a fifth ground for relief, plaintiff also contends that his trial counsel was ineffective for failing to advise him to take a plea deal. Respondent argues: (1) The state court's determination of Ground 1 was neither contrary to nor an unreasonable application of Supreme Court precedent; and (2) all remaining grounds for relief (Grounds 2, 3, 4, and the apparent fifth ground for relief) are procedurally barred. Finally, respondent argues that, to the extent the court finds that claims are not procedurally barred, the state court's determinations of those claims are

neither contrary to nor an unreasonable application of Supreme Court precedent.

### A. Procedural Bar

Respondent argues that all grounds for relief – except Ground 1 – are procedurally barred because petitioner defaulted those claims in state court. Specifically, the state court denied these claims with citation to In re Robbins, 18 Cal. 4th 770 (1998), and In re Clark, 5 Cal. 4th 750 (1993).

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief relies on a state law ground that is independent of federal law and adequate to support the judgment. See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989). However, a discretionary state rule is not adequate to bar federal habeas corpus review. See Siripongs v. Calderon, 35 F.3d 1308 (9th Cir. 1994). Generally, the only state law grounds meeting these requirements are state procedural rules. Even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate: (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice. See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

Pursuant to policies adopted by the California Supreme Court in June 1989, a habeas petition was presumed timely if filed within 90 days after a petitioner's reply brief on direct appeal was due. See In re Robbins, 19 Cal.4th 770, 780 (1998). In Walker v. Martin, the Supreme Court held that California's timeliness requirement qualifies as an independent state ground adequate to bar federal habeas relief. See 1312 S.Ct. 1120, 1128-31 (2011). Therefore, the defaults imposed in this case by the state court bar federal habeas review absent a showing of cause and prejudice or a fundamental miscarriage of justice. In his reply brief, petitioner does not address either exception. The court finds, therefore, that all claims – except Ground 1 – are barred.

**B.     Merits – Ground 1**

In Ground 1(a), petitioner argues that the trial court erred by instructing the jury under CALCRIM No. 371 on suppression and manufacture of evidence. In Ground 1(b), petitioner contends that the trial court erred in concluding that evidence of the conversation between himself and Myra was not overly prejudicial under California Evidence Code § 352. The state court addressed these claims together as follows:

> Defendant contends the trial court abused its discretion not in admitting evidence of the jailhouse conversation between defendant and Myra, but in "abandon[ing]" the duty to weigh the prejudicial effect of that evidence against its probative value as required under section 352 and instead delegating that duty to the jury. He argues further that the court's error in failing to weigh the evidence under section 352 was compounded by its instruction to the jury on consciousness of guilt by suppression and fabrication of evidence (CALCRIM No. 371), given the "insufficient basis" for that instruction. For the following reasons, we disagree with the former claim and therefore need not address the latter.

The state court then outlined state law governing the application of § 352 and held:

> Here, the court's ruling demonstrates that it applied the test required under section 352. First, the court requested that counsel explain the relevance of the evidence sought to be admitted. Counsel for the People explained that the relevant portions of the jailhouse conversation demonstrated that defendant was asking Myra to memorize something and to testify falsely on his behalf. Defense counsel argued that theory was speculative and urged that, if asked, defendant would provide another presumably innocent explanation for his questions to Myra. The court permitted the testimony, noting the evidence "goes directly to whether or not defendant is credible," regardless of whether defendant "claims he has some innocent explanation." The court ruled as follows: "Whether it [the evidence] was to influence that person to testify falsely or some other way is the issue that's before the court – the inference the DA would like to draw is that it shows that's an inference to try to persuade a witness to testify falsely. The jury, I suppose, could draw that inference. I'm guessing that they could also draw the inference that it was some harmless reason too. So the court thinks that during cross-examination this would be allowed and you could question him, both of you, as to what the intent was and then let the jury decide."
>
> Later, during discussions with counsel regarding exhibits to be entered, defense counsel again objected to admission of the tape-recording jailhouse conversation between defendant and Myra "as not relevant, 352, 5th, and 6th Amendments." The court overruled defense counsel's objection, stating as follows: "Again we discussed this at the bench earlier.

9

> For those reasons the court will find that any probative value outweighs any prejudicial effect."
>
> The fact that the court considered argument from counsel on the relevance of the proffered evidence and its express statement "any probative value outweighs any prejudicial effect," is evidence that the court was well aware of its duty under section 352 and did in fact conduct the required analysis under that statute. There was no error.
>
> Given our disposition in this respect, we reject defendant's contention that there was an insufficient basis for the jury instruction on consciousness of guilt by suppression or fabrication of evidence.

The court agrees with respondent that the claims raised in Ground 1 – relating to admission of evidence under California Evidence Code § 352 and a resulting jury instruction – are not cognizable because they relate to interpretation and/or application of state law. A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

A "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d 971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see

also <u>Hamilton v. Vasquez</u>, 17 F.3d 1149, 1159 (9th Cir. 1994).  To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>Crisafi v. Oliver</u>, 396 F.2d 293, 294-95 (9th Cir. 1968); <u>Chavez v. Dickson</u>, 280 F.2d 727, 736 (9th Cir. 1960).

        In this case, petitioner argues: "On cross-examination the prosecutor speculated Frazier attempted to manufacture evidence by telling his girlfriend to lie. . . ."  Referencing a brief attached to his petition, petitioner also argues that the trial court erred in admitting the evidence because it was irrelevant and that the trial court abused its discretion under § 352.  Issues of relevant and whether evidence is prejudicial are purely questions of state law and petitioner has not pointed to anything which would suggest that the trial court's evidentiary rulings rendered the trial fundamentally unfair.  As the state appellate court notes, the trial court's evidentiary rulings regarding the jailhouse conversation with Myra merely allowed both sides to question petitioner about the issue, ultimately leaving it for the jury to decide.  The court cannot find anything inherent in the trial court's rulings which would have unfairly nudged the jury in any particular direction in making this decision.

        Petitioner also argues that the trial court further erred by instructing the jury regarding the suppression and manufacture of evidence.  In general, to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." <u>Prantil v. California</u>, 843 F.2d 314, 317 (9th Cir. 1988) (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 146 (1973)).  To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" <u>Estelle v. McGuire</u>, 502 U.S. 62, 72 (1991) (quoting <u>Cupp</u>, 414 U.S. at 147).  In making its determination, this court must evaluate an allegedly ambiguous jury instruction "'in the context of the overall charge to the jury as a component of the entire trial process.'" <u>Prantil</u>, 843 F.2d at 817 (quoting <u>Bashor v. Risley</u>, 730 F.2d 1228, 1239 (9th Cir. 1984)).  Further, in reviewing an

allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)). Petitioner's burden is "especially heavy" when the court fails to give an instruction. Henderson v. Kibbe, 431 U.S. 145, 155 (1977). Where an instruction is missing a necessary element completely, the "reasonable likelihood" standard does not apply and the court may not ". . . assume that the jurors inferred the missing element from their general experience or from other instructions. . . ." See Wade v. Calderon, 29 F.3d 1312, 1321 (9th Cir. 1994). In the case of an instruction which omits a necessary element, constitutional error has occurred. See id.

It is well-established that the burden is on the prosecution to prove each and every element of the crime charged beyond a reasonable doubt. See In re Winship, 397 U.S. 358, 364 (1970). Therefore, due process is violated by jury instructions which use mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime charged. See Francis v. Franklin, 471 U.S. 307, 314 (1985); see also Sandstrom v. Montana, 442 U.S. 510 (1979). A mandatory presumption is one that instructs the jury that it must infer the presumed fact if certain predicate facts are proved. See Francis, 471 U.S. at 314. On the other hand, a permissive presumption allows, but does not require, the trier of fact to infer an elemental fact from proof of a basic fact. See County Court of Ulster County v. Allen, 442 U.S. 140, 157 (1979). The ultimate test of the constitutionality of any presumption remains constant – the instruction must not undermine the factfinder's responsibility at trial, based on evidence adduced by the government, to find the ultimate facts beyond a reasonable doubt. See id. at 156 (citing In re Winship, 397 U.S. at 364).

///
///
///
///

Here, there is nothing about CALCRIM No. 371 which would have relieved the prosecution of any burdens of proof.  The instruction merely permitted the jury to find consciousness of guilt if it also found that petitioner had attempted to suppress evidence by telling Myra to lie for him.  No mandatory presumptions were created by the instruction.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that petitioner's motion for an evidentiary hearing (Doc. 22) be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 22, 2013

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE