# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMSON O.C. FRAZIER, | No. 2:12-CV-0343-KJM-CMK-P |
| Petitioner, | |
| vs. | SUPPLEMENTAL FINDINGS AND RECOMMENDATIONS |
| M.D. BITER, | |
| Respondent. | |
| _____/ | |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 16), and petitioner's reply (Doc. 22).

///
///
///
///
///
///

1

# I. BACKGROUND

A. **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> On July 17, 2007, defendant, along with his girlfriend Myra, his sister Tanya, Tanya's 18-month-old daughter, defendant's friend Jeremy Neal, and Jeremy's nephew Brandon, walked from an apartment complex to a convenience store to get something to drink. Along the way, they were approached from behind by three men – Alberto Estrada, Jimmy Palmer, and a man named Frankie – all wearing red, the color worn by members of the Nortenos gang. Defendant, who is a member of the Surenos gang and wearing blue, turned around and asked the three men if they had a cigarette. One of them replied, "Fuck no." Palmer asked defendant, "Do you bang?" (a phrase used to determine whether someone is in a gang). Defendant pulled a gun out of his pocket and said something like, "Say I won't" or "You don't think I'll do it" and then fired the gun at Estrada, hitting him in the chest. Defendant fled the scene, but was arrested shortly thereafter.
>
> Several hours after the shooting, defendant's sister, Tanya, told police the three men had been "talking shit about southsiders." She confirmed that defendant pulled out a gun, said "You don't think I'll do it," and shot Estrada, adding "That's why I'm mad at him [defendant] cause now I'm not going to see him forever. I love him but he's going to prison forever."
>
> The day of the shooting, police interviewed defendant, who denied being present at the shooting and denied any knowledge of the incident. Several months later, Palmer, who was in custody on another matter, identified defendant in a photographic lineup.
>
> At trial, Tanya denied much of the information she provided to detectives the night of the shooting, claiming she lied that night because she had a warrant and was under the influence of drugs and feared she would be arrested, and because she was pregnant and was afraid her children would be taken away from her.

///

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

   Defendant testified that Estrada called him a "snitch" and then lifted up his shirt, revealing a gun. When Estrada went to grab the gun, defendant pulled his own gun out of his back pocket, cocked it, and fired it at Estrada.

   During cross-examination, the prosecution sought to impeach defendant as to his credibility with an audiotape of a jailhouse conversation between defendant and his girlfriend, Myra. Defense counsel objected first on hearsay grounds. The court overruled the objection but heard argument from counsel at the bench regarding the relevance of the proposed evidence. The court concluded the evidence was admissible and permitted the jury to hear the following:

   Myra: Everything else doesn't even matter.

   Defendant: Hey, did you see that? Did you memorize it. Babe.

   Myra: That's all you baby.

   Defendant: Huh?

   Myra: I don't know what you [sic] talking about.

   Defendant: I'm asking . . . Okay. Can I call you as a witness? That's all right? Yes or no? I need . . . .

   Myra: I thought . . . (unintelligible).

   Defendant: Huh?

   Myra: (Unintelligible)?

   The tape then continued,

   Myra: I think she's having a boy.

   Defendant: Look.

   Myra: But. . . . Yeah, she's eight months pregnant. . . .

   Defendant: Listen, Myra. Can I tell you something? Myra? Will you get on the stand and give your side of the story of what happened?

   Myra: What?

   Defendant: Will you get on the stand and give your side of the story of what happened? Pick up the phone. Can we pick the phone up?

   Defendant explained that he had asked Myra to memorize the telephone numbers of his attorney and someone named Evie Joseph.

### B. Procedural History

Petitioner was convicted of second degree murder and unlawful possession of a firearm with enhancements for the following: (1) personal use of a firearm causing great bodily injury; (2) having one prior "strike" conviction; and (3) having served one prior prison term. Petitioner was sentenced to an aggregate prison term of 55 years to life, plus 11 years. The California Court of Appeal affirmed the conviction and sentence in an unpublished opinion. The California Supreme Court declined direct review. Petitioner's state habeas petitions were denied by the Butte County Superior Court, the California Court of Appeal, and the California Supreme Court.

This matter is before the undersigned pursuant to the District Judge's March 4, 2014, order directing further review of Grounds 2 and 5. Specifically, the court ordered as follows:

> Petitioner raises five grounds for relief in his petition. The magistrate judge recommends dismissal of all but the first ground for relief as procedurally barred, see Findings and Recommendations, filed August 22, 2013 (ECF No. 25) at 7-8, and he recommended dismissal of the first ground for relief on the merits. Petitioner raises objections to the recommended denials of Grounds 1 and 5.
>
> The magistrate judge's recommendation that Grounds 2 through 5 be dismissed on the ground of procedural default is based on the order of the Superior Court of Butte County, which denied a habeas petition filed by petitioner in that court on March 9, 2011, in part with citation to In re Robbins, 18 Cal. 4th 770 (1998), and In re Clark, 5 Cal. 4th 750 (1993). (Footnote omitted). The state superior court denied the petition filed in that court by checking two boxes on a form order that lists twenty-four possible grounds for denial of a petition: first, that "[t]he facts alleged in the petition, if true, fail to establish a prima facie case for relief (In re: Duvall (1995) 9 Cal.4th 464, 474); and second, as untimely. Lodged Doc. at 1-2. The state superior court judge also added a handwritten third ground for denial: "Defendant was notified of people's offer and did not accept it." Id. at 3.

///
///
///
///

4

The doctrine of procedural default limits federal habeas review of federal claims denied by state courts on procedural grounds. Under this doctrine, unless the default is excused

> a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule . [Internal citations omitted]. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See e.g., Walker v. Martin, 562 U.S. ___, ___, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ___, ___, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009).

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012). "A summary denial citing Clark and Robbins means that the [state habeas] petition has been rejected as untimely." Walker, 131 S.Ct. At 1122. And California's timeliness rule, as evidenced by summary denials citing Clark and Robbins, is an independent and adequate ground which can be sufficient to preclude federal habeas corpus review under the doctrine of procedural default. See id. at 1131.

Where, as here, there is one "reasoned" state court decision addressing petitioner's habeas claims, the court "looks through" the silent denial of the California Supreme Court to that decision and presumes the high court's decision "rest[s] upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991); see Cannedy v. Adams, 706 F.3d 1148, 1157-58 (9th Cir. 2013). In addition, where "the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar. . . ." Ylst, 501 U.S. at 803. Finally, where the reasoned state court decision rests both on a procedural bar and on the merits, the doctrine of procedural default applies to all claims rejected by the state court on procedural grounds. See Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003).

For all of the foregoing reasons, the court concurs with the magistrate judge's finding that Grounds 2 through 5 of the petition were rejected by the state courts as untimely and that the doctrine of procedural default may bar this court's consideration of those claims. As noted above, the doctrine of procedural default bars federal habeas review of these claims unless the default is excused.

> In the ordinary case, a state court procedural default may be excused only if a habeas petitioner can demonstrate both "cause" for the default and "prejudice" under Coleman v. Thompson[, 501 U.S. 722 (1991)].

///

> "[C]ause" under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him: We think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.
>
> Coleman 501 U.S. at 753, 111 S.Ct. 2546 (internal quotation marks omitted). To show "prejudice" under Coleman, the "habeas petitioner must show 'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Murray v. Carrier, 477 U.S. 478, 494, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986) (quoting United States v. Frady, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)) (omissions and emphasis in original).

Ha Van Nguyen v. Curry, 736 F.3d 1287, 1292 (9th Cir. 2013). In Martinez v. Ryan, 132 S.Ct. 1309, the United States Supreme Court "relaxed the Coleman cause-and-prejudice standard for excuse from procedural default in a narrow category of cases." Ha Van Nguyen, 736 F.3d at 1292. The Martinez Court "established an equitable rule under which the failure of an ineffective counsel or pro se petitioner to raise, in a state court initial-review collateral proceeding, a claim of ineffective assistance of counsel ('IAC') at trial can be 'cause' to excuse a state-court procedural default." Id. at 1289.

> [A] federal habeas court [may] find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

Trevino v. Thaler, ___ U.S. ___, ___, 133 S.Ct. 1911, 1918, 185 L.Ed.2d 1044 (2013) (quoting Martinez, 132 S.Ct. at 1318-1319, 1320-1321).

     The magistrate judge did not consider the application of Martinez and Thaler to petitioner's second or fifth ground for relief, both of which involve claims of ineffective assistance of counsel. For that reason, the court will not adopt the findings and recommendations with respect to those two grounds at this time and will remand the matter to the magistrate judge for further consideration. . . .

The court finds the findings and recommendations fully supported with respect to the recommended disposition of grounds 1, 2, and 4 and will adopt those findings and recommendations at this time.

## II.  DISCUSSION

In Ground 2, petitioner claims: "Appellate counsel was ineffective failing to raise issues on appeal that were developed in trial records."  Petitioner adds:

> Counsel failed to raise due process and Confrontation Clause claims – 3 & 4 herein – (3) trial court's erroneous admission inadmissible hearsay unproved uncharged prior bad acts; (4) prosecutor's misconduct testifying to hearsay prior bad acts.  If counsel would have fully investigated – records – and communicated properly, the grounds were fairly preserved in record for appeal. . . .

In Ground 5, petitioner claims that his trial counsel was ineffective for failing to advise him to accept a plea offer.[2]  It follows that, if the claims are meritless, the state court's cited procedural default would bar federal habeas review because the claims would not be "substantial" such that the exception outlined in Martinez would apply.[3]  The court will, therefore, begin with an analysis of the merits of these claims to determine whether they are substantial.

The Sixth Amendment guarantees the effective assistance of counsel.  The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness.  See id. at 688.  To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  See id. at 690.  The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were

---

[2]  While not specifically designated as a fifth ground for relief, the claim is set forth in the petition.

[3]  Both Martinez and Thaler left the question of whether the ineffective assistance of counsel claims at issue were "substantial" for determination on remand.

outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

    Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

    The Strickland standards also apply to appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.  Thus,

counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. See id. at n.9.

### A. Ground 2

According to petitioner, appellate counsel was ineffective for failing to argue on direct appeal that the trial court erred in admitting hearsay evidence. Petitioner also claims that appellate counsel was ineffective for failing to argue that the prosecutor committed misconduct by questioning him at trial regarding prior bad acts.

#### 1. Hearsay Evidence Claim

According to petitioner:

> On cross-examination of Frazier, the prosecutor elicited evidence that Frazier was a passenger in a car that was involved in a shooting another person named Cisco or Brisco, discharged a gun – Ruger 41 – from inside the car.
> However, the prosecutor tried to elicit alleged evidence that the weapon – Ruger 41 – belonged to an unknown (at trial) victim who alleged Frazier was a suspect named who had stolen the Ruger gun in a residential burglary. . . . Simmons [trial counsel] objected to the hearsay. . . . The court sustained defense objections. . . .
> But the court allowed over defense objection – to the prosecutor eliciting inadmissible hearsay – that Frazier's girlfriend's (Myra's) mother called police – on July 16th 2007 – the day before shooting in this case – that Myra's mother – alleged that Frazier threatened to shoot her in the head with a gun.

The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. See U.S. Constitution, Amendment VI. Prior to the Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), the admission of hearsay evidence did not violate the Confrontation Clause where the hearsay fell within a firmly rooted exception to the hearsay rule or otherwise contained "particularized guarantees of trustworthiness." Lilly v. Virginia, 527 U.S. 116, 123-24 (1999); Ohio v. Roberts, 448 U.S. 56, 66 (1980). In Crawford, however, the Supreme Court announced a new rule: Out-of-court statements by witnesses not appearing at trial that are testimonial are barred under the

Confrontation Clause unless the witnesses are unavailable and the defendant had a chance to cross-examine, regardless of whether such statements are deemed reliable by the trial court. See 541 U.S. at 51. If error occurred, the next question is whether such error was harmless. See Bockting v. Bayer, 399 F.3d 1010, 1022 (9th Cir. 2005) (applying harmless error analysis).

While the Supreme Court in Crawford "le[ft] for another day any effort to spell out a comprehensive definition of 'testimonial,'" the Court provided some guidance. 541 U.S. at 68. The Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51; see also Davis v. Washington, 547 U.S. 813 (2006) (holding that law enforcement interrogations directed at establishing the facts of a past crime or in order to identify the perpetrator are testimonial).

The out-of-court statements at issue here – Myra's mother's statement to the police that petitioner had threatened to shoot her in the head – are not testimonial in nature. At the time the statement was made, the police were not questioning Myra's mother incident to any ongoing investigation. Instead, the statement was an unsolicited accusation unrelated to any police investigation and there is no evidence that the police conducted any follow-up interrogation or, for that matter, that Myra's mother even spoke to a police officer further about her accusation.

Because the out-of-court statement at issue was not testimonial, the Crawford rule against hearsay is not implicated, rendering petitioner's claim meritless. Because the claim lacked merit, appellate counsel was not ineffective for declining to raise it on direct appeal. Therefore, upon further review directed by the court's March 4, 2014, order, the court finds that petitioner has not demonstrated cause and prejudice under Martinez to excuse his procedural default in state court because the claim is insubstantial and federal habeas review of this aspect of petitioner's ineffective assistance of appellate counsel claim is barred.

///

2. <u>Prosecutor Misconduct Claim</u>

Petitioner claims that the prosecutor committed prejudicial misconduct by eliciting evidence of an unproved prior bad act. Specifically, petitioner alleges that the prosecutor acted inappropriately when he cross-examined petitioner regarding his involvement in a prior shooting and burglary. As respondent notes, however, the trial court sustained defense counsel's objection to the prosecutor's questions about petitioner's involvement in the prior shooting and instructed the jury to disregard the testimony.

Success on a claim of prosecutorial misconduct requires a showing that the conduct so infected the trial with unfairness as to make the resulting conviction a denial of due process. See <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987). The conduct must be examined to determine "whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly." <u>United States v. Simtob</u>, 901 F.2d 799, 806 (9th Cir. 1990). Depending on the case, a prompt and effective admonishment of counsel or curative instruction from the trial judge may effectively "neutralize the damage" from the prosecutor's error. <u>United States v. Weitzenhoff</u>, 35 F.3d 1275, 1291 (9th Cir. 1993) (citing <u>Simtob</u>, 901 F.2d at 806).

Given the curative instruction given by the trial court judge to disregard the testimony, any error resulting from the prosecutor's questioning was neutralized. Therefore, upon further review directed by the March 4, 2014, order, the court finds that petitioner's claim of prosecutorial misconduct lacks merits and appellate counsel was not ineffective for failing to raise it on direct appeal. For this reason, this aspect of petitioner's ineffective assistance of appellate counsel claim is also insubstantial, rendering the <u>Martinez</u> exception inapplicable. Federal habeas review is barred by petitioner's procedural default in state court.

///

///

///

### B. Ground 5

Petitioner asserts that trial counsel was ineffective for advising him to reject a plea bargain offered by the prosecutor. Specifically, petitioner claims that his trial counsel advised him to reject a plea bargain that would have resulted in a 16-year prison term because counsel believed that petitioner's claim for self-defense was strong and that he (counsel) would instead seek a plea in exchange for an 8-year term. Petitioner adds that he ". . .went along with counsel's advice thinking the [8-year] plea was the better offer/advice." Thus, as the state court noted, petitioner was informed of the prosecution's 16-year offer and decided not to accept it.

Based on petitioner's allegations, it is clear that counsel advised petitioner regarding the prosecution's 16-year offer, that counsel told petitioner that his self-defense argument was strong and that he should not accept the offer, and that counsel advised petitioner that he would instead pursue a plea bargain involving an 8-year term. These allegations do not suggest deficient performance. To the contrary, petitioner's own allegations indicate that counsel exercised reasonable professional judgment in advising petitioner that a better bargain could be negotiated in light of what counsel believed to be a strong case for self-defense. Given that petitioner continues to argue to this day that he acted in self-defense, he must have thought at the time that counsel's advice was sound. Petitioner's decision to heed his trial counsel's advice not to accept the 16-year offer does not demonstrate constitutionally deficient performance.

Because petitioner's own allegations indicate that counsel acted reasonably, the court cannot say that his ineffective assistance of trial counsel claim is substantial such that the Martinez exception would apply to preclude application of the state court's procedural default to bar federal habeas corpus review. Upon further review as directed by the District Judge's March 4, 2014, order, the court concludes that petitioner has not demonstrated cause and prejudice precluding application of the state court's procedural default. The petition should be denied on Ground 5.

///

### III. CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied on remaining Grounds 2 and 5.

These supplemental findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 2, 2015

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE